## HATCH vs. SPEARIN.

A special promise by the maker of a note or instrument not negotiable in the hands of an assignee, to pay the note to him, does not merge the original promise on the note ; — but the assignee may maintain an action in *his own name* upon the *special promise* to himself, or, in the name of the *payee,* upon the note.

On the note being again assigned, the second assignee could not avail himself of the special promise made to the first assignee, as the foundation of an action ; but he must resort to his action *on the note*.

A party cannot avail himself of an omission of the Judge to charge the jury upon a particular point of law, although raised by the evidence in the case, unless the Judge be specially requested to give the instructions, the omission of which is complained of.

THIS was an action of *assumpsit* founded upon the following receipt or memorandum in writing, *viz :*

" *St. Andrews, April 6, 1829.*

Received from *Harris Hatch, Esq.* a note of hand dated at *Calais; Dec. 22, 1828,* payable ninety days after date, to *William Thompson* or order, for seventy pounds, payable at the *Charlotte County Bank*, drawn by *Asa A. Pond,* indorsed by said *Thompson* and one *Thaddeus Ames,* held by *Elnathan Taylor,* and by him left with the said *Harris Hatch,* to notify the parties, which said note I hold myself accountable for, and the amount thereof, or get a discharge from *Elnathan Taylor* to the said *Harris Hatch,* for the said note.

*William Spearin.*"

The suit was brought for the benefit of one *Conner,* to whom the memorandum or receipt had been assigned by one *Taylor,* the owner of the note, he having before deposited said note with *Hatch*, who delivered it to the defendant on his giving the foregoing receipt.

It was proved that the defendant had repeatedly promised *Taylor*, while he had possession of the receipt, to pay him the amount of the note.

The defendant's counsel contended, that the promise testified to by *Taylor*, could not affect the defendant in this action, as well because it was made without any legal consideration, as because

if made at all, it was to *Taylor*, and not to *Hatch* or *Conner* — and that any legal obligation created by said promise was not assignable, and would not aid in sustaining this action — and the Judge was requested to charge the jury to that effect. He instructed them that the action might be maintained on the receipt, independent of the said promise, which was not relied upon as the ground of action, but as an admission that the demand was due — that, in case of a promise to an assignee, upon an instrument not negotiable, he may maintain an action on that promise, but an action will lie in the name of the assignee upon the instrument.

The counsel for the defendant further requested the Judge to instruct the jury, that the promise to *Taylor* while he had the note in his possession, took away or merged the cause of the present action. But the Judge declined so to instruct the jury.

A verdict was returned for the plaintiff. If the instruction given was erroneous, or that which was requested ought to have been given, the verdict was to be set aside, and a new trial granted, otherwise judgment was to be rendered thereon, unless set aside upon a motion filed for that purpose, on the ground that it was against the weight of evidence.

There was much testimony in the case, but the necessity of reporting it, is superseded by the full and lucid statement in the opinion of the Court, which was delivered by

PARRIS J. — This is assumpsit on a receipt given for a note of hand. — There was evidence tending to prove that the note for which the receipt was given, was the property of one *Taylor*; that he had deposited the note with *Hatch*, from whom the defendant procured possession of it, by giving the receipt in suit. *Hatch* transferred and assigned the receipt to *Taylor*, who assigned it to one *Conner*, for whose benefit the present action is prosecuted. There was also evidence, that while the receipt was in *Taylor's* possession, the defendant repeatedly promised to pay him the amount of the note.

The defendant contended, as matter of law, that this special promise to *Taylor* was not assignable; but the Judge instructed the jury, that the action might be maintained, for the benefit of

*Conner,* on the receipt, independent of the special promise to *Taylor.*

The law relative to the assignment of choses in action is well settled. *Taylor* might have maintained an action on the receipt in the name of *Hatch,* his assignor, at any time previous to the transfer to *Conner,* or he might have relied upon the defendant's special promise, and supported an action thereon in his own name. His right on the receipt was not merged by the special promise. When he transferred the receipt to *Conner,* he assigned all his rights under it and nothing more, and *Conner* thereby became entitled to enforce the performance of the defendant's engagements to *Hatch,* but not to claim any benefit of the special promise to *Taylor.*

There is in this case a motion at common law for a new trial, because the verdict is against evidence. Under this motion, all the evidence that was exhibited on the trial is reported, from which it appears, that there was evidence tending to prove that the note, described in the receipt, was delivered up to *Taylor* by one *Webb,* by the directions of the defendant ; and the defendant's counsel now claim to have the verdict set aside, because the Judge did not instruct the jury that this constituted a good defence. If, in charging the jury, the Judge gives erroneous instructions, the party against whom they are given may avail himself of that fact to avoid the verdict. But he cannot avail himself of an omission to charge upon a particular point of law, although raised by the evidence in the case, unless specially requested or moved to give the instructions, by the party in whose favor they may properly be claimed to be given. The defendant contends that he did request the Judge to instruct the jury upon the law arising from the fact, if they should so find it, that *Taylor* became possessed of the note, as testified by *Webb.* If the request was made, it ought to have been complied with. Was it made ? The following was the only request made, *viz.* " that the jury might be instructed that *Taylor* having had the note in his hands and having called on the defendant for payment of the same, and the defendant having expressly promised *Taylor* to pay the note, an action might be maintained on such promise by *Taylor,* the assignee, which would take away or merge the cause

of the present action. The instruction requested was not that the possession of the note by *Taylor*, would constitute a good defence, but that the defendant having promised *Taylor* to pay the note, an action might be maintained, on such promise, by *Taylor*, *which* would take away or merge the cause of the present action. We do not understand the law to be as assumed in the request. The note was against *Pond* for £70, equal to $280, and the promise by *Spearin* to pay it, if any promise was made by him, was verbal. The statute to prevent frauds and perjury, which provides that no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt of another, unless the agreement, upon which such action shall be brought, or some note or memorandum thereof shall be in writing, would be an insuperable bar to any recovery against *Spearin* upon the verbal promise to pay *Pond's* note. The instruction requested was, therefore, properly refused.

It is further contended that the Judge erred in the instructions which he gave, *viz.* that he told the jury the action *was* maintained. The instruction given, as reported in the case, will not bear this construction. The defendant's counsel, at the trial, contended that "the defendant's promise to *Taylor* to pay the note could not affect the defendant, as well because it was made without any legal consideration, as because, if made at all, it was made to *Taylor*, and not to *Hatch* or *Conner ;* and that any legal obligation created by said promise was not by law assignable, and would not aid in sustaining this action," and the Judge was requested to charge to this effect. The jury were instructed, that the action *might* be maintained on the receipt, independent of the promise, which was not relied upon as the ground of the action, but as an admission that the demand was justly due ; that in case of a promise to an assignee of an instrument not negotiable, *he* may maintain an action on that promise, but an action will lie in the name of the assignor upon the instrument. Now we are unable to perceive, in this instruction, any intimation to the jury that the evidence sustained the action, or that the defence was not complete.

The defendant contended, that no action could be maintained on the receipt in the name of *Hatch*, because there had been a

special promise to the assignee. The Court say, not so ; although the assignee may maintain an action in his own name, on the special promise, yet he may, at his election, rely upon the receipt, and maintain an action thereon in the name of *Hatch*, the assignor. No intimation is given to the jury that the action is supported by the evidence, or that if they should find that *Taylor* had the note in his possession, as testified by *Webb*, it would not constitute a-perfect bar to the action. Upon that question, the Judge was not requested to give instructions, and none were given. If the defendant relied upon that point, he should have moved the Court to charge thereon ; — as he did not, it is now too late to take advantage of the omission. It is manifest, however, from the report, that this was not a point relied upon at the trial. We think there was no error in the instructions given, and that the one requested, as to the legal effect of the defendant's promise to *Taylor*, was properly withheld.

The next question is, ought this verdict to be set aside on the ground of its being against evidence, or the weight of evidence. There was evidence on both sides, as to the manner in which *Spearin* became connected with this transaction. The evidence from *Taylor* is directly contradictory to *Webb's* in most of the important points. *Taylor* was on the stand, as a witness, and testified in presence of the jury ; and it was exclusively their province to determine to which they would give credit. Perhaps there were sufficient reasons why they should rely upon *Taylor's* testimony in preference to *Webb's*. *Webb* says, *Taylor* told him that it was agreed between *Taylor* and *Thompson*, when *Thompson* indorsed the note, that he was not to be responsible to *Taylor*, and was not to be called on by him. *Taylor* testifies that he never told *Webb* so, and it is not improbable that the jury believed *Taylor* in this, for it does not appear by *Thompson's* deposition that he was ever applied to by *Taylor*, or had any conversation with *him* relative to indorsing the note. *Thompson* was applied to by *Pond*. It does not appear who produced to *Thompson* the assurance of indemnity on account of his indorsement, which he received from *Spearin*. *Thompson* says that *Taylor* obtained it of *Spearin*, and that he understood that both he and *Spearin* were acting for the benefit of *Taylor*. But he does not

say that he understood this from *Taylor.* If it was from *Spearin* that he received the impression, it can have no weight against *Taylor* in this action. *Jones,* who acted as *Pond's* agent, does not say that *Taylor* procured the assurance of indemnity from *Spearin* to *Thompson.* *Jones,* as the agent of *Pond,* went to *Thompson* for his name. *Thompson* said he was willing to accommodate *Pond,* but was unwilling to indorse his note, unless *Spearin* would indemnify him. *Jones* says, he wrote the note, *Pond* signed it, *the indemnity passed from Spearin to Thompson,* and *Thompson* indorsed it. But *Jones* is careful not to say that *Taylor* requested *Spearin* to give the assurance, or become in any way answerable to *Thompson;* but he does say, that he supposed *Spearin* acted as the mutual friend of *Pond* and *Taylor.*

If *Taylor* had procured the indemnity from *Spearin,* *Jones* would have been likely to have known it; and instead of saying that the *indemnity passed from Spearin to Thompson,* would have left no room for doubt who procured it. There is not a witness who states directly, of his own knowledge, that *Taylor* became answerable to *Spearin* on account of the indemnity by him given to *Thompson.*

After *Thompson* was notified as indorser, through *Hatch,* by *Taylor's* request, and *Spearin* was called upon to make good his indemnity, he resorts to *Hatch,* tells him he knows all about the note and the conditions upon which it was given ; that he was the agent of *Taylor;* and, in consequence of these representations, induced *Hatch* to give him the note, and thereby secure the erasure of *Thompson's* name, as indorser. As *Taylor* left the note with *Hatch,* and there is no proof that *Spearin* had any authority, either as *Taylor's* agent or otherwise, to obtain possession of it in the manner he did, it would appear much more consistent with fair dealing if he had refrained from officiously interfering, and instead of causing the note to be mutilated by the erasure of *Thompson's* name, thereby depriving it of the only solvent party, and rendering it worthless as security, he had permitted *Hatch* to have returned it, according to his stipulation, to *Taylor,* the undisputed owner, from whom he received it. The question of *Taylor's* liability to hold the defendant harmless from his stipulation to *Thompson,* would then have regularly arisen between

these parties. *Taylor* had a right to have that question presented in this manner. He had a right to call upon *Hatch* to return the note in the situation in which he took it, according to the terms of the receipt. He was not bound to accept it from *Hatch* with *Thompson's* name erased, and thereby deprived of all its value. There is no evidence in the case that he ever did receive the note, or had it in his possession, after *Spearin* took it from *Hatch*, except what arises from *Webb's* deposition ; and if in the numerous direct contradictions between the testimony of *Taylor* and *Webb*, the jury believed the former at the expense of the latter, they might, by applying the maxim *falsus in uno, falsus in omnibus*, exclude the whole of *Webb's* testimony.

From the evidence reported, the jury, probably, considered *Spearin*, in giving the indemnity to *Thompson*, as acting for the accommodation of *Pond*. It was *Pond's* debt, and it was due to *Taylor*. They might have listened to the argument, which has been addressed to us, that as *Taylor* was the creditor and *Pond* the debtor, it would be improbable that the creditor should attempt to increase his security by procuring an indorser for his debtor, and at the same time stipulate for the indorser's indemnity. They found that, by the receipt in suit, *Spearin* admitted that the note was held by *Taylor* and left with *Hatch* to notify the parties, of whom *Thompson* was one, and is so named in the receipt ; that *Spearin* expressly engaged, in the receipt, to hold himself accountable for the note and for the amount thereof, or get a discharge from *Taylor;* thereby recognizing *Taylor's* rights ; and that, instead of procuring the discharge, his first act was to take from the note the only name which gave it value, thereby shielding himself from his obligation to indemnify *Thompson*.

We do not say that we should have given the same verdict. We might have weighed the evidence differently, and come to a different conclusion. But we are not satisfied that the verdict is so manifestly against the weight of evidence as to justify, our interference, especially as two juries have concurred in the same opinion.

*Emmons*, for the plaintiff.

*Allen* and *Boutelle*, for the defendant.